UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DARREN KORVER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SAGE THERAPEUTICS, INC., BARRY E. GREENE, and KIMI IGUCHI, <br><br> Defendants. | Case No. 1:24-cv-06511-LGS |

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF MARK FRIEDMAN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 4

    I.      THE COURT SHOULD APPOINT FRIEDMAN AS LEAD PLAINTIFF .......... 4

           A.     Friedman Has the Largest Financial Interest of Any Eligible Movant ....... 4

           B.     Friedman Satisfies the Applicable Requirements of Rule 23 ..................... 6

    II.     LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE
         APPROVED ................................................................................................ 8

    III.    THE PENSION FUNDS GROUP'S COMPETING MOTION SHOULD BE
         DENIED ...................................................................................................... 8

           A.     The Pension Funds Group Is an Improper Attorney-Driven Group ........... 8

CONCLUSION .................................................................................................................... 17

**Cases**

*Aude v. Kobe Steel, Ltd.*,
  17-CV-10085, 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ...................................................4, 6

*Chahal v. Credit Suisse Grp. AG*,
  18-CV-2268 *et al.*, 2018 WL 3093965 (S.D.N.Y. June 21, 2018) .......................................1, 4

*Chauhan v. Intercept Pharms.*,
  No. 21-CV-00036 (LJL), 2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) ........................... *passim*

*City of Pontiac General Employees' Retirement System v. Lockheed Martin
  Corp.*,
  844 F. Supp. 2d 498 (S.D.N.Y. 2012).................................................................................10

*Cohen v. Luckin Coffee Inc.*,
  No. 1:20-CV-01293-LJL, 2020 WL 3127808 (S.D.N.Y. June 12, 2020) .....................9, 12, 13

*Dookeran v. Xunlei Ltd.*,
  Nos. 18-cv-467 (RJS) *et al.*, 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018)..........................2, 7

*Elstein v. Net1 UEPS Techs., Inc.*,
  No. 13 CIV. 9100 ER, 2014 WL 3687277 (S.D.N.Y. July 23, 2014) ......................................9

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) .....................................................................................2, 4, 7

*Galmi v. Teva Pharms. Indus. Ltd.*,
  302 F. Supp. 3d 485 (D. Conn. 2017).................................................................................9

*Goldberger v. PXRE Grp., Ltd.*,
  No. 06-CV-3410KMK, 2007 WL 980417 (S.D.N.Y. Mar. 30, 2007).....................................5

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825, 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)................................................4

*In re Donnkenny Inc. Sec. Litig.*,
  171 F.R.D. 156 (S.D.N.Y. 1997) .......................................................................................14

*In re Doral Fin. Corp. Sec. Litig.*,
  414 F. Supp. 2d 398 (S.D.N.Y. 2006).................................................................................9

*In re Gentiva Sec. Litig.*,
  281 F.R.D. 108 (E.D.N.Y. 2012) ......................................................................................3, 9

*In re Jones Soda Co. Sec. Litig.*,
No. C07-1366RSL, 2008 WL 418002 (W.D. Wash. Feb. 12, 2008)......................................10

*In re Molson Coors Brewing Co. Sec. Litig.*,
233 F.R.D. 147 (D. Del. 2005) ...............................................................................................8

*In re Orion Sec. Litig.*,
No. 08 CIV. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008) ............................2, 6, 7

*In re Petrobras Sec. Litig.*,
104 F. Supp. 3d 618 (S.D.N.Y. 2015)...............................................................................14, 15

*In re Vicuron Pharms., Inc. Sec. Litig.*,
225 F.R.D. 421 (E.D. Pa. 2005)...............................................................................................5

*Jakobsen v. Aphria, Inc.*,
No. 18 CIV. 11376 (GBD), 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ............................13

*Janbay v. Canadian Solar, Inc.*,
272 F.R.D. 112 (S.D.N.Y. 2010) .....................................................................................2, 6, 7

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ...........................................................................................4, 6

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
311 F.R.D. 373 (S.D.N.Y. 2015) .............................................................................................8

*Khunt v. Alibaba Group Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)................................................................................11, 12

*Micholle v. Ophthotech Corp.*,
No. 17-CV-1758 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018)................................13

*Nakamura v. BRF S.A.*,
No. 18-CV-2213 (PKC), 2018 WL 3217412 (S.D.N.Y. July 2, 2018)...............................9, 13

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
17-CV-06130 (LTS)(SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ...............................4

*Schriver v. Impac Mortg. Holdings, Inc.*,
No. SACV 06-31 CJC RNBX, 2006 WL 6886020 (C.D. Cal. May 2, 2006) ...................10, 16

*Siegel v. Bos. Beer Co., Inc.*,
No. 21-CV-7693 (VSB), 2021 WL 5909133 (S.D.N.Y. Dec. 14, 2021)................................11

*Takara Trust v. Molex, Inc.*,
229 F.R.D. 577 (N.D. Ill. 2005)...............................................................................................5

*Teran v. Subaye, Inc.*,
No. 11 CIV. 2614 NRB, 2011 WL 4357362 (S.D.N.Y. Sept. 16, 2011).....................................5

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008)..............................................................................3, 9

**Statutes**

15 U.S.C. § 78u-4 ......................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ................................................. *passim*

**Rules**

Fed. R. Civ. P. 23 ......................................................................................... *passim*

Lead Plaintiff Movant Friedman[1] respectfully submits this memorandum of law in further support of his motion for appointment as Lead Plaintiff and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 13); and in opposition to the competing motion of Steamfitters Local 449 Pension & Retirement Security Funds (the "Steamfitters Funds") and Trust of the Retirement System of the UPR (the "UPR Trust" and, collectively with the Steamfitters Funds, the "Pension Funds Group") (Dkt. No. 17).[2]

### PRELIMINARY STATEMENT

This Action is a putative class action securities fraud lawsuit on behalf of investors in Sage securities. As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed. The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as lead plaintiff the movant with the greatest financial interest in the outcome of the litigation; ***and*** that satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, that movant is Friedman, who incurred a loss of approximately $228,305 in connection with his Class Period transactions in Sage securities. *See* Dkt. No. 15-1. Although the PSLRA does not define "financial interest," courts in the Second Circuit, including this District, recognize that the amount of financial loss is the most significant factor to be considered. *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*, 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018) (equating financial interest with economic loss). The table below sets forth Friedman's loss compared to the loss claimed by the Pension Funds Group:

---

[1] All capitalized terms herein are defined in Friedman's moving brief, unless otherwise indicated. *See* Dkt. No. 14.

[2] Initially, two other putative Class members, Edward Freedman ("Freedman") and Kapila Wijayatilleke ("Wijayatilleke"), filed similar competing motions. *See* Dkt. Nos. 8, 10. On October 30, 2024, Wijayatilleke withdrew his competing motion. *See* Dkt. No. 23. On November 11, 2024, Freedman also withdrew his competing motion. *See* Dkt. No. 24.

| Movant | Loss | |
|---|---|---|
| Friedman | $228,305 | |
| ~~Pension Funds Group~~ | ~~$247,084~~ | |
| *UPR Trust* | | *$145,742* |
| *Steamfitters Funds* | | *$101,342* |

As the above table reflects, Friedman's loss ($228,305) is roughly ***$100,000*** larger than that allegedly incurred by the UPR Trust ($145,742) or the Steamfitters Funds ($101,342), when considered individually. *See* Dkt. No. 19-3. Although the Pension Funds Group collectively claims a marginally larger loss than Friedman, the Pension Funds Group is an improper, attorney-driven grouping, such that the Court should not consider its members' losses in the aggregate, and, moreover, is ineligible for appointment as Lead Plaintiff, irrespective of its financial interest in this litigation, for a litany of reasons related to its inadequacy within the meaning of Rule 23, as discussed in detail below. Accordingly, Friedman possesses the largest financial interest in this Action of any eligible movant.

In addition to his significant financial interest, Friedman also strongly satisfies Rule 23's typicality and adequacy requirements. Friedman's claims in this Action are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See In re Orion Sec. Litig.*, No. 08 CIV. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 8, 2008); *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010). In addition, Friedman's significant loss gives him a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, he is aware of no conflict between his interests and those of the Class, and, as discussed in greater detail below, he has selected counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel for the Class. *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *Dookeran v. Xunlei Ltd.*, Nos. 18-cv-467 (RJS) *et al.*, 2018 WL 1779348, at *2-3 (S.D.N.Y. Apr.

12, 2018).  Further demonstrating his adequacy, Friedman has submitted a detailed Declaration providing the Court with biographical information about himself and attesting to, *inter alia*, his understanding of the significance of his motion, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and his readiness to shoulder these responsibilities on behalf of the Class.  *See* Dkt. No. 15-4 ¶¶ 1-5, 7.

In stark contrast, the Pension Funds Group—the only competing movant—is inadequate, irrespective of its claimed financial interest in this litigation, because it is an improper group comprised of unrelated investors, each of which individually has a significantly smaller loss than Friedman, that were cobbled together by their attorneys for the sole purpose of securing the PSLRA's largest financial interest presumption.  Courts in the Second Circuit, including this District, routinely deny motions by investor groups that were "assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) (collecting cases in this District); *see also, e.g.*, *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 120 (E.D.N.Y. 2012) ("[T]he Court seeks to avoid the impression that a group of unrelated investors has been cobbled together . . . to displace a single competing . . . investor[.]" (internal quotation marks and citations omitted)).  Compounding these issues, the Pension Funds Group is represented by two law firms that ***both*** seek appointment as lead counsel, thus raising additional concerns regarding their attorney-driven and artificial nature.  *See Chauhan v. Intercept Pharms.*, No. 21-CV-00036 (LJL), 2021 WL 235890, at *5 (S.D.N.Y. Jan. 25, 2021) (denying motion where lead plaintiff movant group comprised of two investors "propose[d] two different law firms, each of which is independently competent, to handle this lawsuit").

For the reasons set forth herein, Friedman respectfully submits that the Court should grant his motion in its entirety and deny the competing motions.

**ARGUMENT**

**I.      THE COURT SHOULD APPOINT FRIEDMAN AS LEAD PLAINTIFF**

The PSLRA creates a strong presumption that the lead plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest must only make a *prima facie* showing of typicality and adequacy within the meaning of Rule 23.  *See Aude v. Kobe Steel, Ltd.*, 17-CV-10085, 2018 WL 1634872, at *3-4 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007). Once this presumption is triggered, it may be rebutted only upon "proof" that the presumptive lead plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Here, the most adequate class representative is Friedman.

**A.      Friedman Has the Largest Financial Interest of Any Eligible Movant**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  *Id.* § 78u-4(a)(3)(B)(iii).  While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in the Second Circuit, including this District, and around the country recognize that the amount of financial loss is the most significant factor to be considered.  *See, e.g.*, *Foley*, 272 F.R.D. at 128 (equating financial interest with economic loss); *Chahal*, 2018 WL 3093965, at *4 (same); *Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017) (same); *In re Comverse Tech., Inc. Sec. Litig.,* No. 06-CV-1825, 2007 WL 680779, at *3 (E.D.N.Y. Mar. 2, 2007) (recognizing that most courts consider "the

4

approximate loss a plaintiff suffered during the class period to be most influential in identifying the plaintiff with the largest financial interest"); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 421, 511 (E.D. Pa. 2005) (finding the amount of the financial loss is "the most significant" factor); *Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("[M]ost courts simply determine which potential lead plaintiff has suffered the greatest total losses.").

Under the foregoing analysis, no movant eligible for appointment as Lead Plaintiff in this Action has a larger financial interest than Friedman. As the chart at p. 2 reflects, Friedman has incurred a substantial loss of $228,305—the largest individual loss among the competing movants by a significant margin. *See* Dkt. No. 19-3 (indicating that the UPR Trust incurred a loss of only $145,742, whereas the Steamfitters Funds incurred a loss of only $101,342). Although the Pension Funds Group collectively claims a marginally larger loss than Friedman ($247,084), the Pensions Funds Group is an improper, attorney-driven grouping, such that the Court should not consider its members' losses in the aggregate. *See, e.g.*, *Teran v. Subaye, Inc.*, No. 11 CIV. 2614 NRB, 2011 WL 4357362, at *3-5 (S.D.N.Y. Sept. 16, 2011) (finding "we are not persuaded that we should allow the [movant group] to aggregate their claims as a group" because, *inter alia*, "[i]t is apparent that the [movant group] was cobbled together by counsel for purposes of making this motion and becoming the lead plaintiff" and "[a competing movant] has a significantly greater financial interest in the case than any of the individuals that make up the [movant group]"); *Goldberger v. PXRE Grp., Ltd.*, No. 06-CV-3410KMK, 2007 WL 980417, at *5 (S.D.N.Y. Mar. 30, 2007) (appointing solo movant that "undeniabl[y] . . . has a far greater financial interest in this case than any of the individuals that make up the [competing movant group]" where the group was found to be an improper group under the PSLRA).

Likewise, because the Pension Funds Group—the only competing movant—is an improper, attorney-driven grouping, as discussed in detail in Section III.A., *infra*, it is inadequate within the meaning of Rule 23, and thus disqualified from consideration, irrespective of its claimed financial interest in this litigation. Accordingly, as the ***only*** movant eligible for appointment as Lead Plaintiff in this litigation, Friedman by default has the largest financial interest in this Action within the meaning of the PSLRA.

**B.      Friedman Satisfies the Applicable Requirements of Rule 23**

In addition to possessing the largest financial interest in the outcome of this litigation— and thus being the statutorily presumed "most adequate plaintiff" (15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb))—Friedman has plainly made the requisite *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23. *Aude*, 2018 WL 1634872, at *3; *Kaplan*, 240 F.R.D. at 94 ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required.").

First, Friedman's claims in this litigation satisfy the typicality requirement of Rule 23(a)(3) because his claims are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See Orion*, 2008 WL 2811358, at *5; *Janbay*, 272 F.R.D. at 120. Friedman alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Sage, or by omitting to state material facts necessary to make the statements they did make not misleading. Moreover, Friedman, like other Class members, purchased or otherwise acquired Sage securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Sage's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of

conduct as the Class's claims, satisfy the typicality requirement of Rule 23. *See Orion*, 2008 WL 2811358, at *5; *Janbay*, 272 F.R.D. at 120.

Second, Friedman satisfies the adequacy requirement of Rule 23(a)(4) because his significant loss gives him a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, Friedman is aware of no conflict between his interests and those of the Class, and, as discussed in greater detail below, Friedman has selected and retained counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel for the Class. *Foley*, 272 F.R.D. at 131; *Dookeran*, 2018 WL 1779348, at *2-3. Friedman has further demonstrated his adequacy by submitting with his motion papers a detailed Declaration that provides information about himself, including his city and state of residence, investment experience, and professional and educational background, and that attests to, *inter alia*, his understanding of the significance of his motion and the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, as well as his readiness to shoulder these responsibilities on behalf of the Class. *See* Dkt. No. 15-4 ¶¶ 1-5, 7. Indeed, as a lawyer, Friedman already has legal and professional experience that is highly complementary to the work he would perform as a Lead Plaintiff under the PSLRA and as a fiduciary on behalf of fellow Class members. *See id.* ¶ 2.

* * * *

Because Friedman has the largest financial interest in the relief sought by the Class and otherwise satisfies the applicable requirements of Rule 23, he is the presumptive "most adequate" plaintiff of the Class within the meaning of the PSLRA. To overcome the strong presumption entitling Friedman to appointment as Lead Plaintiff, the PSLRA requires *"**proof**"* that Friedman is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this

case and any arguments to the contrary should be flatly rejected.

## II. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with a lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese*, 589 F. Supp. 2d at 398)); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, Friedman has selected Pomerantz as Lead Counsel for the Class. As its resume reflects, Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. *See* Dkt. No. 15-5. Thus, the Court may be assured that by approving Friedman's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

## III. THE PENSION FUNDS GROUP'S COMPETING MOTION SHOULD BE DENIED

### A. The Pension Funds Group Is an Improper Attorney-Driven Group

The Pension Funds Group is inadequate under Rule 23 and thus ineligible for appointment as Lead Plaintiff in this Action because it is an improper group that was clearly assembled by counsel for the sole purpose of aggregating losses to secure the statute's "largest financial interest" presumption. Courts in the Second Circuit, including this District, routinely deny motions by investor groups that were "assembled as a makeshift by attorneys for the purpose of amassing an

aggregation of investors purported to have the greatest financial interest in the action." *Varghese*, 589 F. Supp. 2d at 392 (collecting cases in this District); *see also, e.g.*, *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 401-02 (S.D.N.Y. 2006) (rejecting groups of unrelated investors, stating that "by allowing attorneys to designate otherwise unrelated plaintiffs as a purported 'group,' and by allowing unrelated groups to aggregate investments in an effort to generate the 'largest financial interest,' a strong possibility emerges that lawyers will form such groups to manipulate the selection process, and thereby gain control of the litigation"); *Gentiva*, 281 F.R.D. at 120 ("One of the primary concerns in adopting the PSLRA was preventing the manipulation by class action lawyers of the clients whom they purportedly represent . . . . This is not to say that there is any evidence in this case that the lawyers of the [movant group] proceeded in any manner other than good faith. However, the Court seeks to avoid the impression that a group of unrelated investors has been cobbled together . . . to displace a single competing . . . investor[.]" (internal quotation marks and citations omitted)); *Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 493 (D. Conn. 2017) ("[C]ourts look skeptically at whether the grouping operates to circumvent the purposes of the PSLRA."). As such, a "proposed plaintiff group has the burden of showing that aggregation is appropriate." *Nakamura v. BRF S.A.*, No. 18-CV-2213 (PKC), 2018 WL 3217412, at *3 (S.D.N.Y. July 2, 2018); *see also Cohen v. Luckin Coffee Inc.*, No. 1:20-CV-01293-LJL, 2020 WL 3127808, at *4 (S.D.N.Y. June 12, 2020) (denying motion by a "self-titled 'Group' [that] is in fact a random assemblage of unlike individuals and a company that . . . not only had no pre-existing relationship but apparently did not even know of one another before counsel introduced them"); *Elstein v. Net1 UEPS Techs., Inc.*, No. 13 CIV. 9100 ER, 2014 WL 3687277, at *5 (S.D.N.Y. July 23, 2014) (denying motion by group "despite [movants'] assurances that they are united in their goals and objectives and are willing and able to serve the Class", citing "concern

that this group has simply been 'cobbled together' for the purpose of achieving the lead plaintiff designation").

Courts around the country, including in this District, particularly disfavor appointing groups as Lead Plaintiff in PSLRA actions where, as here, a group proposes multiple law firms for lead counsel appointment, which raises concerns about attorney-driven litigation and underscores the artificial nature of the group. This is because "Congress's aim in enacting the 'lead plaintiff' provisions [of the PSLRA was] to avoid lawyer-driven litigation." *City of Pontiac General Employees' Retirement System v. Lockheed Martin Corp.*, 844 F. Supp. 2d 498, 503 (S.D.N.Y. 2012); *see, e.g.*, *Chauhan*, 2021 WL 235890, at *5 (denying motion where lead plaintiff movant group comprised of two investors "propose[d] two different law firms, each of which is independently competent, to handle this lawsuit" and "provide[d] no cogent explanation for why", finding that "their conduct to date belies the notion that they would take an active role in the litigation supervising counsel"); *Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC RNBX, 2006 WL 6886020, at *8 (C.D. Cal. May 2, 2006) (denying motion by movant represented by multiple law firms, expressing "concern[s] that [a] multiplicity of counsel could impede the progress of the litigation, complicate discovery and communication among the parties, and increase the potential for conflict among the plaintiff class"); *see also In re Jones Soda Co. Sec. Litig.*, No. C07-1366RSL, 2008 WL 418002, at *3 (W.D. Wash. Feb. 12, 2008) ("The potential for duplicative services, leadership discord, and increased attorney's fees militate against the appointment of multiple law firms, however, especially in cases where one law firm has the proven ability to adequately manage and litigate securities class actions.").

Here, the Pension Funds Group is precisely the type of lawyer-driven amalgamation that courts decline to appoint as Lead Plaintiff in PSLRA actions. First, the Pension Funds Group is

an assemblage of unrelated investors that have provided ***no*** evidence of any pre-litigation relationship. *See Siegel v. Bos. Beer Co., Inc.*, No. 21-CV-7693 (VSB), 2021 WL 5909133, at *6 (S.D.N.Y. Dec. 14, 2021) (declining motion to appoint investor group as lead plaintiff, citing "concern[s] about the lack of any pre-litigation relationship between the group members"); *Khunt v. Alibaba Group Holding Ltd.*, 102 F. Supp. 3d 523, 533 (S.D.N.Y. 2015) (declining to appoint proposed group as lead plaintiff where they "effective[ly] admit[ted] to having no pre-litigation relationship . . . [and] [t]heir only involvement in the litigation thus far appears to have been a single conference call."). The information submitted by the Pension Funds Group confirms that its disparate members—the Steamfitters Funds and the UPR Trust—had no relationship with one another prior to this litigation and were assembled into a movant group by their counsel. Here, there is no evident connection between, on the one hand, the Steamfitters Funds, which is presumably a plan for the benefit of the members of the Steamfitters Local 449 union, and on the other hand, the UPR Trust, which is presumably a plan for the benefit of employees of the University of Puerto Rico. *See* Dkt. No. 19-4 ¶¶ 2-3. Indeed, neither of these entities attests to having any relationship with or even knowledge of the other prior to this litigation. *See generally id.*

With respect to their purported reasons for joining together, the Pension Funds Group's Joint Declaration merely contains rote recitations to the effect that they "believe that the securities class action claims against Sage Therapeutics should be led by dedicated and sophisticated institutional investors" (*id.* ¶ 5); that they share "a common interest" because they "suffered substantial losses in their investments in Sage Therapeutics securities", as would presumably any prospective lead plaintiff movant in this Action (*id.*); and that their decision to form together as a group was purportedly "informed by a variety of factors," including their "past positive

experiences serving as representative parties in securities and shareholder litigation as part of small groups" and their purported "complementary trading" because they each "purchased securities at different times during the Class Period", the latter of which is literally true of the vast majority of any combination of Class members (*id.* ¶ 6).  Friedman respectfully submits that "[t]he Court [sh]ould expect no less from *any* person or persons proposing to be lead [plaintiffs]" and that "[t]he rote recitation of th[e]se factors does not provide evidence that any member of the group—much less the group as a whole—has had significant involvement in the litigation thus far." *Cohen*, 2020 WL 3127808, at *4 (emphasis in original).

Moreover, instead of attesting to any specific, meaningful communications with each other prior to the filing of their motion, the Pension Funds Group's Joint Declaration generally attests that, "[b]efore filing our motion, **we communicated** regarding the merits of this action, the status of the proceedings, the responsibilities of a lead plaintiff appointed pursuant to the PSLRA, the Pension Funds' ability to work together and to collaboratively assume the role of lead plaintiff, and efforts to promote effective communication in the future." Dkt. No. 19-4 ¶ 7 (emphasis added). What form did this purported "communicat[ion]" take, and when?  Was it multiple phone calls over a period of weeks, or a single email exchange?  The dearth of detail regarding their pre-motion, much less pre-litigation, communications suggests there was minimal, if any, meaningful communication before the filing of their joint motion.  *See Khunt*, 102 F. Supp. 3d at 533 (declining to appoint proposed group as lead plaintiff where they "effective[ly] admit[ted] to having no pre-litigation relationship . . . [and] [t]heir only involvement in the litigation thus far appears to have been a single conference call.").  Additionally, the fact that their Joint Declaration was signed by the UPR Trust only **three days** before the motion deadline and by the Steamfitters Funds **the day**

*of the deadline* does not suggest that the two movants communicated with each other to any meaningful degree before their motion was filed. *See* Dkt. No. 19-4 at \*6-7.

Likewise, with respect to their purported plans for cooperation, the Pension Funds Group generally attests that they "communicated" regarding their purported "ability to work together and to collaboratively assume the role of lead plaintiff," including "***efforts*** to ***promote*** effective communication in the future"; that they "will collaborate on joint decision-making regarding this litigation ***as needed***"; and that they "***expect*** that if appointed, [they] will fulfill [their] fiduciary responsibilities to the proposed class and make joint decisions together in a consensual manner." *Id.* ¶ 7 (emphases added). "No more is stated." *Cohen*, 2020 WL 3127808, at \*4; *see also Jakobsen v. Aphria, Inc.*, No. 18 CIV. 11376 (GBD), 2019 WL 1522598, at \*3 (S.D.N.Y. Mar. 27, 2019) (denying motion where "the plans for cooperation described in the [movant group]'s joint declaration are vague and conclusory" and provided only "boilerplate assurances"); *Micholle v. Ophthotech Corp.*, No. 17-CV-1758 (VSB), 2018 WL 1307285, at \*9 (S.D.N.Y. Mar. 13, 2018) (denying motion where movant group provided only "conclusory assurances that call into question whether it can manage this litigation effectively" (internal quotation marks omitted)).

Absent any pre-litigation relationship, or any indication in their motion papers as to how the members of the Pension Funds Group became acquainted, the most obvious inference is that the Steamfitters Funds and the UPR Trust, both of which individually claim roughly ***$100,000 less*** in losses than Friedman, were introduced by counsel solely to aggregate their losses in order to manufacture the "largest financial interest" in this litigation—a practice that courts have found to be squarely at odds with the purposes of the PSLRA. *See*, *e.g.*, *Nakamura*, 2018 WL 3217412, at \*4 (denying motion by group that "was 'assembled as makeshift by attorneys' in order to claim the greatest financial interest in the outcome of the case" because it was at odds with "the PSLRA's

goal of ensuring that shareholders, and not just plaintiffs' counsel, plays an active role in driving the litigation" (quoting *Varghese*, 589 F. Supp. 2d at 392)); *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997) ("To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation. Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff.").

Worse, the Pension Funds Group is represented by multiple law firms that each seek appointment as co-lead counsel, which further attests to the group's inadequacy and lawyer-driven nature. *See, e.g.*, *Chauhan*, 2021 WL 235890, at \*5 (denying motion where lead plaintiff movant group comprised of two investors "propose[d] two different law firms, each of which is independently competent, to handle this lawsuit" and "provide[d] no cogent explanation for why", finding that "their conduct to date belies the notion that they would take an active role in the litigation supervising counsel"). Here, the Pension Funds Group has selected Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Abraham, Fruchter & Twersky, LLP ("AF&T") as co-lead counsel for the Class. *See* Dkt. No. 18 at 7-9. Notwithstanding the Pension Funds Group's *pro forma* assurance in its Joint Declaration that "Robbins Geller and AF&T have been directed to prosecute this action in an efficient, cost-effective manner" (Dkt. No. 19-4 ¶ 9), the Pension Funds Group has not explained *why* it needs to be represented by two law firms in this matter, nor why the Class *needs* two law firms to serve as lead counsel. For example, in *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 622 (S.D.N.Y. 2015), a case involving a much more expansive class action litigation than the one here, the district court flatly refused to appoint three proposed movants that would have been jointly represented by a combination of two different law firms. In denying the lead plaintiff motions seeking appointment of the two law firms, the district court

underscored that the proposed lead plaintiff group SKAGEN-Danske failed to "adequately explain why it was applying in its motion to be represented in this case not only by [one] firm but also by a second law firm . . . which did not have a previous attorney-client relationship with any of the members of the SKAGEN–Danske group, but did have an established relationship with [first firm]." *Id*. at 622.[3]  This case is against a single, U.S.-based issuer (Sage) and certain of its officers, alleging straightforward fraud claims arising under Section 10(b) of the Exchange Act.  Nothing about the facts or claims in this litigation suggests that prosecuting this Action will be so complex or onerous in any respect that the combined resources of two law firms serving jointly as lead counsel are necessary.

Indeed, as the Pension Funds Group's own opening brief touts, Robbins Geller is "a ***200-attorney nationwide law firm*** with offices in New York, [that] regularly practices complex securities litigation", the "securities department [of which alone] includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues." Dkt. No. 18 at 7 (emphasis added).  "Courts throughout the country have noted Robbins Geller's reputation for excellence, which has resulted in the appointment of Robbins Geller attorneys to lead roles in ***hundreds*** of complex class action securities cases." *Id.*  (emphasis added).  "Likewise, AF&T has the commitment and ability to serve as Lead Counsel because it has extensive experience and is highly competent in prosecuting similar actions" and "has successfully prosecuted numerous securities fraud class actions nationwide[.]" *Id.* at 8-9.  The Pension Funds Group's curious decision to proffer two individual, highly capable law firms to both serve as co-lead counsel on behalf of the Class, where the potential

---

[3] In *Petrobras*, the court rejected the SKAGEN–Danske group, with $222 million in losses, and appointed a movant (Pomerantz's client) with $84 million in losses.  *Id*. at 621, 624.

for duplicative services and the concomitant increase in expenses and costs is unnecessary, especially where, as here, both law firms have the proven ability to adequately manage and litigate securities class actions on their own (*see id.* at 7-9), raises substantial questions as to the Pension Funds Group's willingness and ability to effectively manage this litigation and oversee their counsel. *See, e.g.*, *Chauhan*, 2021 WL 235890, at *5 (denying motion where lead plaintiff movant group comprised of two investors "propose[d] two different law firms, each of which is independently competent, to handle this lawsuit" and "provide[d] no cogent explanation for why", finding that "their conduct to date belies the notion that they would take an active role in the litigation supervising counsel"); *Schriver*, 2006 WL 6886020, at *8 (denying motion by movant represented by multiple law firms, expressing "concern[s] that [a] multiplicity of counsel could impede the progress of the litigation, complicate discovery and communication among the parties, and increase the potential for conflict among the plaintiff class").

The Pension Funds Group's proposed co-lead counsel arrangement raises troubling questions as to whether it would be supervising its counsel if the Court were to appoint it as Lead Plaintiff and approve its selection of both of these two firms as co-lead counsel. In contrast to this dual-law firm structure, Friedman has selected a single law firm to represent him. Pomerantz stands ready to litigate the case on behalf of Sage investors in an effective and efficient manner without the involvement of co-lead counsel. There is simply no need for two law firms to represent the defrauded investors jointly as co-lead counsel in this Action.

In short, the Pension Funds Group is precisely the kind of attorney-driven assemblage that courts in the Second Circuit find inadequate to serve as Lead Plaintiff in PSLRA actions.

**CONCLUSION**

For the foregoing reasons, Friedman respectfully requests that the Court issue an Order: (1) appointing Friedman as Lead Plaintiff for the Class; and (2) approving Friedman's selection of Pomerantz as Lead Counsel for the Class.

Dated: November 12, 2024

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Mark Friedman and Proposed Lead Counsel for the Class*

THE SCHALL LAW FIRM
Brian Schall
(*pro hac vice* application forthcoming)
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Mark Friedman*