UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---
x

DARREN KORVER, on Behalf of Himself
and All Others Similarly Situated,

Plaintiff,

vs.

SAGE THERAPEUTICS, INC., BARRY E.
GREENE, and KIMI IGUCHI,

Defendants.

---
x

Civil Action No. 1:24-cv-06511-LGS

<u>CLASS ACTION</u>

THE PENSION FUNDS' MEMORANDUM
OF LAW IN OPPOSITION TO COMPETING
LEAD PLAINTIFF MOTIONS

4873-4956-1080.v1

## I.    INTRODUCTION

Four competing motions were filed by putative class members seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"): (1) Steamfitters Local 449 Pension & Retirement Security Funds and Trust of the Retirement System of the UPR (the "Pension Funds"); (2) Mark Friedman; (3) Kapila Wijayatilleke; and (4) Edward Freedman.   *See* ECF 8, 10, 13, 17.[1]   The PSLRA's statutory framework provides a strong presumption that the "most adequate plaintiff" in a securities class action is the "person or group of persons" with the largest financial interest in the relief sought by the class that also meets the Rule 23 adequacy and typicality requirements.   *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).   Based on information contained in the two remaining lead plaintiff movants' submissions, the Pension Funds are the "most adequate plaintiff:"

| MOVANT | SHARES PURCHASED | NET SHARES PURCHASED | NET FUNDS EXPENDED | LOSS SUFFERED (LIFO) |
|---|---|---|---|---|
| Pension Funds | 30,828 | 22,546 | $437,087 | $247,084 |
| Mark Friedman | 4740 + (177 options) | -4000 | -$4,654 | $231,470 (***gain*** of $24,509 on stock trades and loss of $255,980 on options trades) |

In addition to possessing the largest financial interest in the relief sought by the class, the Pension Funds satisfy Rule 23's requirements.  *See* ECF 18 at 5-7; ECF 19-4.  Because the Pension Funds have the largest financial interest of any movant and are experienced institutional investors who are committed to achieving the best possible outcome for the class, the Pension Funds respectfully request that the Court appoint them Lead Plaintiff.

---

[1]    On October 30 and November 11, 2024, Kapila Wijayatilleke and Edward Freedman filed notices withdrawing their lead plaintiff motions.  *See* ECF 23, 24.

4873-4956-1080.v1

By contrast, the competing movant fails to satisfy the PSLRA's requirements because he did not suffer the largest loss, nor can he rebut the presumption in the Pension Funds' favor. Accordingly, because the competing movant cannot trigger the presumption and cannot rebut it, the Pension Funds are entitled to the PSLRA's "most adequate plaintiff" presumption and should be appointed as Lead Plaintiff and their choice of Lead Counsel should be approved.

## II.    ARGUMENT

In determining the "most adequate plaintiff," the PSLRA provides that:

[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –

(aa) has either filed the complaint or made a motion in response to a notice . . . ;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  The most adequate plaintiff presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff – (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(B)(iii)(II).

As demonstrated herein, the Pension Funds are the presumptively "most adequate plaintiff" because they are the movant with the largest financial interest that also satisfies the Rule 23 requirements.

### A.    The Pension Funds Have the Largest Financial Interest

"[T]he PSLRA does not indicate how to calculate which plaintiff has the 'largest financial interest.'" *Husson v. Garrett Motion Inc.*, 2021 WL 211541, at *2 (S.D.N.Y. Jan. 21, 2021)

- 2 -

(Cronan, J.).[2] "In order to make this calculation, many courts in this District look to the factors that make up the so-called *Olsten-Lax Test*: '(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) total net funds expended during the class period; and (4) the approximate losses suffered.'" *Id.*; *Goldenberg v. NeoGenomics, Inc.*, 2023 WL 6389101, at *3 (S.D.N.Y. Oct. 2, 2023) (Rearden, J.). "Many courts place 'the most emphasis on the last of the four factors.'" *Husson*, 2021 WL 211541 at *2; *see Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 475-76 (S.D.N.Y. 2011) (Crotty, J.) ("[A] trend seems to be emerging that the *Lax* factors are properly ordered, so that the number of shares purchased (Factor 1) is the least important and the loss suffered (Factor 4) is the most important."). "To calculate approximate losses, courts 'typically employ one of two methodologies: First-In-First-Out ("FIFO") or Last-In-First-Out ("LIFO").'" *Hom v. Vale, S.A.*, 2016 WL 880201, at *3 (S.D.N.Y. Mar. 7, 2016) (Woods, J.). "Using LIFO to measure is the prevalent practice in this district and others." *City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, 2023 WL 6458930, at *5 (S.D.N.Y. Oct. 4, 2023) (Schofield, J.).

Under each metric of the *Lax-Olsten* test, the Pension Funds clearly suffered the greatest financial interest in the relief sought by the class:

| MOVANT | SHARES PURCHASED | NET SHARES PURCHASED | NET FUNDS EXPENDED | LOSS SUFFERED (LIFO) |
|---|---|---|---|---|
| Pension Funds | 30,828 | 22,546 | $437,087 | $247,084 |
| Mark Friedman | 4740 + (177 options) | -4000 | -$4,654 | $231,470 (*gain* of $24,509 on stock trades and loss of $255,980 on options trades) |

---

[2]     Unless otherwise noted, all emphasis is added and citations are omitted.

4873-4956-1080.v1

Pursuant to the PSLRA's sequential process, "'[o]nce the court "identifies the plaintiff with the largest stake in the litigation, [*i.e.*, the Pension Funds] further inquiry must focus on *that plaintiff* alone and be limited to determining whether [they] satisf[y] the other statutory requirements."'" *Hom*, 2016 WL 880201, at *6.

**B.     The Pension Funds Satisfy Rule 23's Requirements and Are Entitled to the Most Adequate Plaintiff Presumption**

As this Court has noted, one need only make a "'preliminary showing'" at this stage that Rule 23's typicality and adequacy requirements have been satisfied. *City of Omaha*, 2023 WL 6458930, at *6. The Pension Funds satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as lead plaintiff. *See* ECF 18 at 5-7; ECF 19-4.

The Pension Funds meet Rule 23's typicality requirement because their claims arise from the same course of events as the claims of all other class members and involve similar legal arguments to prove the defendant's liability, namely, they "arose from [the Pension Funds'] purchase of publicly-traded [Sage Therapeutics, Inc.] common stock during the Class Period when Defendants' alleged material misrepresentations and omissions improperly inflated the price of the securities." *City of Omaha*, 2023 WL 6458930, at *6. "Of the [30,828] shares purchased during the Class Period, [the Pension Funds] purchased a significant majority at inflated prices – i.e., prior to any of the alleged corrective disclosures [the Pension Funds] retained [22,546] of those shares at the end of the Class Period, and [their] approximate losses are based on a lookback price of [$7.98], significantly below any of its purchase price for shares before any corrective disclosure." *Id*. at *7. Accordingly, the Pension Funds are typical of the class that they seek to represent.

Likewise, the Pension Funds meet Rule 23's adequacy requirement because their interests are clearly aligned with the interests of the other members of the class. In addition, the Pension Funds selected counsel with demonstrated track records of success in prosecuting securities fraud cases and

- 4 -

serving as lead counsel, both in this District and around the country. *See* ECF 18 at 7-9; *see also, e.g.*, *Porter v. Graftech Int'l Ltd.*, 2024 WL 2189642, at *14 (N.D. Ohio May 15, 2024) ("The evidence shows that movant UPR Retirement System has selected and proposed highly qualified lead counsel, the law firms of Abraham, Fruchter & Twersky, LLP and Robbins Geller Rudman & Dowd LLP, to represent the interests of the proposed class, each of which have extensive experience in conducting complex litigation on behalf of shareholders, including major securities class and derivative actions nationwide."); *United Indus. Workers Pension Plan v. Waste Mgmt., Inc.*, 2022 WL 17342492, at *2 (S.D.N.Y. Nov. 30, 2022) (Schofield, J.) ("Robbins Geller has significant experience in securities litigation as lead plaintiff's counsel.").

Moreover, the Pension Funds – as sophisticated institutional investors with experience serving as lead plaintiff – are the preferred lead plaintiff candidate pursuant to the PSLRA. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 273 (3d Cir. 2001) ("Both the Conference Committee Report and the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members."). And while the PSLRA does ***not*** "impose on a group seeking lead plaintiff appointment any greater showing with respect to its financial interest by virtue of its status as a group," the Pension Funds submitted a Joint Declaration evidencing their ability, willingness, and plans to jointly carry out the duties and responsibilities of lead plaintiff. *See San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 2023 WL 3750115, at *3 (S.D.N.Y. June 1, 2023) (Cronan, J.); ECF 19-4; *see also Hansen v. Ferrellgas Partners, L.P.*, 2017 WL 281742, at *3 n.4 (S.D.N.Y. Jan. 19, 2017) (Sullivan, J.) ("Accordingly, to the extent decisions in this District suggest that the PSLRA requires a greater showing from a group with the largest financial interest, . . . the Court respectfully disagrees that the statute imposes such a rule."); *Gru v. Axsome Therapeutics,*

*Inc.*, 2024 WL 230744, at *1 (S.D.N.Y. Jan. 22, 2024) (Schofield, J.) (this Court appointing group of three individual investors as lead plaintiff).

The Pension Funds' collaboration in this litigation follows from their roles as fiduciaries charged with collectively managing over $2 billion in assets for the benefit of thousands of participants and their beneficiaries. *See* ECF 19-4 at ¶¶2-3. Simply put, "[t]hese pension systems have vast assets, apparent investment sophistication, experience in some prior and current class-action lawsuits, and an administrative structure under which they fulfill their fiduciary obligations to their members by choosing counsel to represent them and then maintaining oversight over those attorneys." *City of Brockton Ret. Sys. v. The Shaw Grp., Inc.*, 2007 WL 2845125, at *4 (S.D.N.Y. Sept. 26, 2007) (Dohlinger, J.); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (Chin, J.) ("cooperation among plaintiffs, particularly plaintiffs that are sophisticated institutional investors" demonstrates the group's ability to oversee counsel); *United Indus. Workers*, 2022 WL 17342492, at *2 (this Court appointing three institutional investors as lead plaintiff). Thus, the Pension Funds have triggered the PSLRA's "most adequate plaintiff" presumption.[3]

---

[3] The Trust of the Retirement System of the UPR's original PSLRA Certification inadvertently omitted two cases as a result of an administrative error. This error has been remedied and a corrected Certification is being filed. *See* Exhibit 1 to Declaration of David A. Rosenfeld in Support of the Pension Funds' Memorandum of Law in Opposition to Competing Lead Plaintiff Motions, filed concurrently herewith. Courts agree that "'minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement.'" *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 538-39 (S.D.N.Y. 2015) (McMahon, J.); *Baron v. Talkspace, Inc.*, 2022 WL 1912255, at *6 (S.D.N.Y. June 3, 2022) (Gardephe, J.) (acknowledging that "'it is unsettled whether a candidate for lead plaintiff who has not filed a complaint is even required to submit . . . a certificate,'" and that "courts have allowed certifications to be amended after the sixty-day deadline has passed" and concluding that "[i]n any event, [movant] has since filed amended certifications . . . that comply with the certification requirements under the PSLRA, thereby rendering the issue moot").

- 6 -

**C.     The Presumption in Favor of Appointing the Pension Funds as Lead Plaintiff Cannot Be Rebutted**

To rebut the strong presumption in favor of appointing the Pension Funds as lead plaintiff, the PSLRA requires "proof" that the Pension Funds "will not fairly and adequately protect the interests of the class; or . . . [are] subject to unique defenses that render such plaintiff incapable of adequately representing the class."  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).  Here, the competing movant cannot offer any such proof.  Accordingly, the Court should grant the Pension Funds' lead plaintiff motion and deny the competing motion.

**D.     Mark Friedman's Status as an Options Trader and a Net Gainer, Net Seller Renders Him Atypical**

Because all competing movants claim a smaller loss than the Pension Funds and do not trigger the statutory presumption on that basis alone, the "most adequate plaintiff" inquiry begins and ends with the Pension Funds.  *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) (district courts should not "engage[] in a freewheeling comparison of the parties competing for lead plaintiff").  Even assuming, arguendo, that Mark Friedman – the lead plaintiff movant claiming the second largest loss – was the movant with the largest financial interest, he would still be ineligible for the PSLRA presumption because of the atypical nature of his investment, namely that 100% of his claimed losses were incurred on options trading, as well as his status as a net gainer and net seller.

All of Mr. Friedman's claimed losses were incurred on options transactions, rather than publicly traded common stock.  Courts overwhelmingly find movants like Mr. Friedman who suffered all (or even most) of their losses on options are atypical of the class (which consists primarily of stockholders) and subject to unique reliance defenses that threaten to become the focus of the litigation. *See Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 2020 WL 7698321, at *4

- 7 -

4873-4956-1080.v1

(S.D.N.Y. Dec. 28, 2020) (Buchwald, J.) ("Appointing Jin, whose losses overwhelmingly reflect his sale of put options, raises issues of his typicality and adequacy. . . . Undoubtedly, these questions raised at the lead plaintiff stage will remain, and are certain to become focal points at class certification."); *Cook v. Allergn PLC*, 2019 WL 1510894, at \*2 (S.D.N.Y. Mar. 21, 2019) (McMahon, J.) (movant for whom 60% of losses came "as a result of options trading, which included sales of both puts and calls" was atypical because his appointment as lead plaintiff very likely "'would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict'") (quoting *In re Elan Corp. Sec. Litig.*, 2009 WL 1321167, at \*2 (S.D.N.Y. May 11, 2009) (Hellerstein, J.)); *Jurkowski v. Molycorp., Inc.*, 2014 WL 12792750, at \*3 (S.D.N.Y. Apr. 2, 2014) (Crotty, J.) ("an options holder would not be the most appropriate lead plaintiff for an entire securities class action . . . the Court holds that Broglio's claims do not arise from the same event giving rise to relief and therefore are atypical of the class"); *Jaramillo v. Dish Network Corp.*, 2023 WL 5312062, at \*5 (D. Colo. Aug. 16, 2023) ("The Court agrees with the *Di Scala* and *Cook* courts that appointing movants whose losses overwhelmingly relate to options trades (and whose option-trading strategies may have been motivated by different market incentives than common stock traders) would introduce factual issues irrelevant to the class as a whole.").[4]

Another fatal impediment to Mr. Friedman's lead plaintiff candidacy is his status as both a "net seller" and "net gainer" by virtue of having sold 4,000 more Sage securities during the Class

---

[4]    *See also Patel v. Reata Pharms., Inc.*, 549 F. Supp. 3d 559, 567 (E.D. Tex. 2021) (declining to appoint movant who traded in both options and common stock, but whose losses derived entirely from options trades); *Teroganesian v. Sw. Airlines Co.*, 2023 WL 4565464, at \*5 (S.D. Tex. July 17, 2023) (finding movant who suffered overweight losses in connection with options to be atypical) (citing *Cook*, 2019 WL 1510894, at \*2); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. Aug. 9, 2019) (declining to appoint movant whose losses were on options during the class period).

4873-4956-1080.v1

Period than he purchased, and having received proceeds of roughly $4,650 more from his Class Period sales of Sage securities than he expended purchasing Sage securities during the Class Period. This court and many others have recognized that movants that are both net sellers and net gainers are "effectively disqualifie[d]" from serving as lead plaintiff because they are atypical and subject to the unique defense that they benefited from the fraud. *Born v. Quad/Graphics, Inc.*, 2020 WL 994427, at *2 (S.D.N.Y. Mar. 2, 2020) (Caproni, J.); *City of Omaha*, 2023 WL 6458930, at *6 (collecting cases).

As such, Mr. Friedman's inability to satisfy Rule 23's typicality requirements due to his reliance on options transactions for 100% of his financial interest, as well as his status as a net gainer and net seller, provides an independent basis for rejecting his lead plaintiff candidacy.

## III.     CONCLUSION

It is axiomatic that the investor with the largest financial interest that also satisfies the requirements of Rule 23 is entitled to the PSLRA's most adequate plaintiff presumption.  The competing movants do not possess the largest financial interest and, therefore, cannot trigger the presumption.  Accordingly, the Pension Funds respectfully submit that their motion (ECF 17) should be granted, and the competing motions (ECF 8, 10, 13) should be denied.

DATED:  November 12, 2024                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD

*s/ David A. Rosenfeld*
DAVID A. ROSENFELD

4873-4956-1080.v1

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

ABRAHAM, FRUCHTER & TWERSKY, LLP
MITCHELL M.Z. TWERSKY
ATARA HIRSCH
450 Seventh Avenue, 38th Floor
New York, NY  10123
Telephone:  212/279-5050
212/279-3655 (fax)
mtwersky@aftlaw.com
ahirsch@aftlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

4873-4956-1080.v1