UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DARREN KORVER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SAGE THERAPEUTICS, INC., BARRY E. GREENE, and KIMI IGUCHI,<br><br>Defendants. | Case No.  1:24-cv-06511-LGS |

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION
OF MARK FRIEDMAN FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF LEAD COUNSEL

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT .................................................................................................................................... 3

     I.      FRIEDMAN'S CLASS PERIOD TRANSACTIONS IN SAGE OPTION
           CONTRACTS DOES NOT RENDER HIM ATYPICAL OR INADEQUATE
           UNDER RULE 23 ....................................................................................................... 3

     II.     FRIEDMAN'S STATUS AS A NET SELLER AND NET GAINER DOES NOT
           DISQUALIFY HIM FROM SERVING AS LEAD PLAINTIFF .......................... 7

     III.    ERRORS IN THE UPR TRUST'S SWORN CERTIFICATION FURTHER
           DEMONSTRATE THE PENSION FUNDS GROUP'S INADEQUACY ............ 8

     IV.    THE PENSION FUNDS GROUP IS AN IMPROPER GROUP ........................ 10

CONCLUSION ............................................................................................................................... 11

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chauhan v. Intercept Pharms.*,
   No. 21-CV-00036 (LJL), 2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) ...................................10

*Cook v. Allergn PLC*,
   No. 18 CIV. 12089 (CM), 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ...............................6

*Deutschman v. Beneficial Corp.*,
   132 F.R.D. 359 (D. Del. 1990) .........................................................................................4

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
   No. 20 CIV. 5865 (NRB), 2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020)...............................6

*Flora v. Hain Celestial Grp., Inc.*,
   No. 16CV4581ADSSIL, 2017 WL 11816987 (E.D.N.Y. June 5, 2017).............................2, 3

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) .....................................................................................5, 8

*Goldstein v. Puda Coal, Inc.*,
   827 F. Supp. 2d 348 (S.D.N.Y. 2011)...................................................................................3

*Hall v. Medicis Pharm. Corp.*,
   No. CV08-1821PHX-GMS, 2009 WL 648626 (D. Ariz. Mar. 11, 2009) ........................2, 3, 6

*In re MGM Mirage Sec. Litig.*,
   No. 2:09-CV-01558-GMN, 2010 WL 4316754 (D. Nev. Oct. 25, 2010) ...............................8

*In re Orion Sec. Litig.*,
   No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 7, 2008) ...................................5

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
   No. CIV A 07-177 FLW, 2007 WL 2683636 (D.N.J. Sept. 7, 2007)......................................9

*Jaramillo v. Dish Network Corp.*,
   No. 23-CV-00734-GPG-SKC, 2023 WL 5312062 (D. Colo. Aug. 16, 2023)..........................7

*Jurkowski v. Molycorp, Inc.*,
   No. 13 CIV. 5697 (PAC), 2014 WL 12792750 (S.D.N.Y. Apr. 2, 2014) ...............................6

*Lewis v. CytoDyn, Inc.*,
   No. C21-5190 BHS, 2021 WL 3709291 (W.D. Wash. Aug. 19, 2021) ...............................2, 8

*Medina v. Clovis Oncology, Inc.*,
   No. 15-CV-2546-RM-MEH, 2016 WL 660133 (D. Colo. Feb. 18, 2016) ...............................4

*Nakamura v. BRF S.A.*,
   No. 18-CV-2213 (PKC), 2018 WL 3217412 (S.D.N.Y. July 2, 2018)...................................10

*Richman v. Goldman Sachs Grp., Inc.*,
   274 F.R.D. 473 (S.D.N.Y. 2011) ...............................................................................................2, 8

*Rodriguez v. DraftKings Inc.*,
   No. 21 CIV. 5739 (PAE), 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021).......................3, 9, 10

*Tomaszewski v. Trevena, Inc.*,
   383 F. Supp. 3d 409 (E.D. Pa. 2019) .......................................................................................9

**Statutes**

15 U.S.C. § 78u-4(a) ...............................................................................................................1, 9

PSLRA ....................................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23...............................................................................................................1, 3, 5

Lead Plaintiff Movant Friedman[1] respectfully submits this reply memorandum of law in further support of his motion for appointment as Lead Plaintiff and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 13).

## PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" **and** has made a *prima facie* showing of typicality and adequacy within the meaning of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  This presumption can only be rebutted upon "proof" that the presumptive "most adequate plaintiff" is atypical or inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Here, as discussed at length in his moving and opposition briefs (Dkt. Nos. 14, 25), Friedman is the only movant that satisfies the statutory criteria to be entitled to the "most adequate plaintiff" presumption.  Friedman has incurred a significant loss of approximately $228,305 in connection with his Class Period transactions in Sage securities—the largest financial interest of any eligible competing movant in the relief sought by the Class—and has robustly demonstrated his typicality and adequacy under Rule 23.  *See generally* Dkt. No. 25.

Although a competing movant group of unrelated investors, the Pension Funds Group, collectively claims a  marginally larger loss than Friedman, the Pension Funds Group is an improper attorney-driven assemblage.  *See* Dkt. No. 25 at 3, 8-16.  As such, the group is inadequate under Rule 23 and thus  ineligible for appointment as Lead Plaintiff, irrespective of its financial interest in the Action, nor should the Court consider the group members' losses in the aggregate (as discussed at length in  Friedman's opposition brief).  *See id.*

---

[1] All capitalized terms herein are defined in Friedman's moving or opposition briefs, unless otherwise indicated.  *See* Dkt. Nos. 14, 25.

Nevertheless, the Pension Funds Group urges the Court to deny Friedman's motion, arguing that he is "ineligible for the PSLRA presumption" because "[a]ll of [his] claimed losses were incurred on options transactions" and because of "his status as both a 'net seller' and 'net gainer'" with respect to his Class Period transactions in Sage securities.  Dkt. No. 26 at 7-8.  The Pension Funds Group is wrong.  Courts routinely appoint movants who suffered all or most of their claimed losses through options investments as lead plaintiffs where, as here, the class definition encompasses options investors and the movant's particular options transactions do not differentiate their interests from those of other class members.  *See Hall v. Medicis Pharm. Corp.*, No. CV08-1821PHX-GMS, 2009 WL 648626, at *4 (D. Ariz. Mar. 11, 2009); *see also, e.g.*, *Flora v. Hain Celestial Grp., Inc.*, No. 16CV4581ADSSIL, 2017 WL 11816987, at *1 (E.D.N.Y. June 5, 2017) ("[T]he fact that [movant] only purchased options during the class period does not rebut the presumption in its favor.").  Moreover, while Friedman was indeed a net seller/net gainer with respect to his transactions in Sage securities in total during the Class Period, he was ***not*** a net gainer with respect to his transactions in Sage option contracts specifically—that is, the Sage securities in connection with which he incurred his investment losses.  Courts routinely appoint net sellers who were ***not*** net gainers to serve as lead plaintiffs, as it cannot be argued that they profited from the alleged fraud more than they were harmed by it.  *See, e.g.*, *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 479-80 (S.D.N.Y. 2011) (appointing movant that was a net seller as a lead plaintiff because, "[n]otwithstanding that it is a net seller, [movant] still had losses which can be recognized" and, "[w]hile there is wisdom in the rule that net sellers who are also net gainers should not be lead plaintiffs; there is no good reason not to recognize losses which a net seller has incurred"); *Lewis v. CytoDyn, Inc.*, No. C21-5190 BHS, 2021 WL 3709291, at *4, *7 (W.D. Wash.

2

Aug. 19, 2021) (appointing net seller as lead plaintiff because "it does not appear that he is also a net gainer" (internal quotation marks omitted)).

Finally, in its opposition brief, the Pension Funds Group acknowledged that one of its members, the UPR Trust, submitted a false Certification to the Court with its initial motion papers (*see* Dkt. No. 26 at 6 n.3), further evidencing the group's inadequacy. *See Rodriguez v. DraftKings Inc.*, No. 21 CIV. 5739 (PAE), 2021 WL 5282006, at *6 (S.D.N.Y. Nov. 12, 2021) (errors in motion papers are "undoubtedly relevant and concerning, and play[] an important role in the Court's assessment of [a movant's] adequacy as a putative class representative").

For the reasons set forth herein, Friedman respectfully submits that the Court should grant his motion in its entirety and deny the competing motion of the Pension Funds Group.

## ARGUMENT

### I.    FRIEDMAN'S CLASS PERIOD TRANSACTIONS IN SAGE OPTION CONTRACTS DOES NOT RENDER HIM ATYPICAL OR INADEQUATE UNDER RULE 23

Friedman is not disqualified from appointment as Lead Plaintiff simply because he incurred investment losses in connection with Class Period transaction in Sage option contracts. Courts routinely appoint options investors to serve as lead plaintiff in PSLRA cases when they have demonstrated their adequacy and typicality under Rule 23 and are not subject to any unique defenses. *See, e.g.*, *Flora*, 2017 WL 11816987, at *1 ("[T]he fact that [movant] only purchased options during the class period does not rebut the presumption in its favor."); *see also Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355, 357 (S.D.N.Y. 2011) ("not[ing] that investors who traded in options can be appointed lead plaintiff when the focus of the typicality analysis is . . . 'whether the same or similar injuries arose out of or were caused by Defendants' alleged wrongful course of conduct'" and appointing as lead plaintiff a movant that traded in options (quoting *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123-24 (S.D.N.Y. 2001))); *Hall*, 2009 WL

3

648626, at *4-6 (appointing options holder as lead plaintiff instead of institutional investor in common stock because the latter failed "to offer any evidence that [option holder]'s specific options are themselves atypical", "only argue[d] that the claims of all options holders are inherently atypical such that they cannot represent common stockholders", and therefore "[i]n the absence of any such specific evidence. . . ha[d] not met its burden to provide 'proof' that [options holder] will not fairly and adequately protect the interests of the class or is otherwise subject to unique defenses"); *Medina v. Clovis Oncology, Inc.*, No. 15-CV-2546-RM-MEH, 2016 WL 660133, at *3 (D. Colo. Feb. 18, 2016) (appointing lead plaintiff that "may have held securities that other members of the class did not, such as options . . . [because] the losses allegedly incurred on those securities are still premised on the same factual allegations and legal theories"); *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 371 (D. Del. 1990) (certifying class of call options and common stock purchasers with class representative who purchased only call options).

Here, during the Class Period, Friedman purchased call option contracts which gave him the right—although not the obligation—to purchase Sage common stock at specific prices within a specific time period. Specifically, Friedman purchased 246 Sage *call* option contracts during the Class Period. *See* Dkt. No. 15-1 at *2-6; Dkt. No. 15-3 at *3-5. "[B]oth call option purchasers and stock purchasers hope to profit from an *increase* in the market price of the underlying security." *Deutschman*, 132 F.R.D. at 371 (emphasis in original). Additionally, "the premium, or price of [a call] option contract is directly responsive to the market price of the underlying security and to information affecting that price" and, "[c]onsequently, [call] option traders, like purchasers of the underlying security, are susceptible to misrepresentations which distort the market price" and "can invoke the fraud on the market theory." *Deutschman*, 132 F.R.D. at 371. Friedman held 176 Sage call option contracts as of August 4, 2023, when the truth regarding Defendants' alleged

fraud began to emerge, thereby causing the price of Sage securities to plummet (*see* Dkt. No. 1 ¶¶ 5-6, 65-66), and suffered a significant $228,305 investment loss as a result.  *See* Dkt. No. 15-1 at *2-6; Dkt. No. 15-3 at *3-6.

The particulars of Friedman's Class Period options investments thus show him to be a wholly typical member of the Class in all respects, as well as adequate to represent the Class's interests.  The test for typicality is whether a movant's claim "'arises from the same course of events'" as the claims of other class members and will rely on "'similar legal arguments to prove the defendant's liability.'"  *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).  Here, Friedman, like all Class members, invested in Sage securities, in reliance upon Defendants' positive Class Period statements about the Company, in the good-faith expectation that the value of Sage stock would increase, and suffered losses when the truth emerged via the revelation of the fraud alleged in the Complaint.  *See generally* Dkt. No. 1. Meanwhile, the adequacy inquiry focuses on whether "there is [any] conflict between the proposed lead plaintiff and the members of the class; and [whether] the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."  *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011).  Here, the Pension Funds Group has identified no conflict between Friedman's interests and those of the Class (and indeed, there is none), and with an undisputed investment loss of $228,305, Friedman plainly has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class.  In short, there is nothing about Friedman's options transactions that makes him atypical or inadequate under Rule 23, nor otherwise disqualifies him from serving as Lead Plaintiff in this Action.

The Pension Funds Group's opposition argument, which conspicuously does *not* address the specifics of Friedman's options trading, in effect asks the Court to adopt a rule that options investors are *per se* disqualified from serving as lead plaintiffs in PSLRA actions, irrespective of the nature of their options investments. There is no support in federal securities jurisprudence for the Pension Funds Group's position. *See Hall*, 2009 WL 648626, at *4 (rejecting argument that options holder should be disqualified in the absence of "any evidence that [option holder]'s specific options are themselves atypical", where competing movant "only argue[d] that the claims of all options holders are inherently atypical" and thus "ha[d] not met its burden to provide 'proof' that [option holder] will not fairly and adequately protect the interests of the class or is otherwise subject to unique defenses"). Indeed, the cases upon which the Pension Funds Group relies frequently involved movants who *sold put* options—that is, contracts conveying the right to *sell* securities at a predetermined price within a specific time frame. Unlike the purchase of call options, the sale of put options tends to reflect highly speculative or unorthodox trading that renders a movant atypical of other class members and/or inadequate to represent their interests. *See Di Scala v. ProShares Ultra Bloomberg Crude Oil*, No. 20 CIV. 5865 (NRB), 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020) (rejecting movant whose losses resulted from *sales* of *put* options where class was defined as "all investors who *purchased* or otherwise *acquired*" the company's securities during the class period because questions existed regarding "whether [movant] was motivated by the same market incentives as [other] class members" (emphases added)); *Cook v. Allergn PLC*, No. 18 CIV. 12089 (CM), 2019 WL 1510894, at *1-2 (S.D.N.Y. Mar. 21, 2019) (rejecting movant whose options trading "included *sales* of *both puts <u>and calls</u>* during the same time period" which competing movant argued was "self-contradictory and unusual" (emphases added)); *Jurkowski v. Molycorp, Inc.*, No. 13 CIV. 5697 (PAC), 2014 WL

6

12792750, at *3 (S.D.N.Y. Apr. 2, 2014) (rejecting movant who "***sold put options before*** the class period" finding "there is no link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price" (emphasis added) (internal quotation marks omitted)); *Jaramillo v. Dish Network Corp.*, No. 23-CV-00734-GPG-SKC, 2023 WL 5312062, at *5 (D. Colo. Aug. 16, 2023) (rejecting movant "who exclusively ***s[old] put options***, or who only acquire common stock involuntarily when put options they have written are exercised" because they "are simply differently situated from" common stock purchasers).  Friedman, again, ***bought call*** options during the Class Period, an investment strategy consistent with a positive outlook on Sage's prospects, informed by Defendants' positive Class Period statements.  In short, nothing about Friedman's options investments renders him atypical of the Class in this Action nor inadequate to represent its interests.

## II.  FRIEDMAN'S STATUS AS A NET SELLER AND NET GAINER DOES NOT DISQUALIFY HIM FROM SERVING AS LEAD PLAINTIFF

In its opposition brief, the Pension Funds Group argues that because Friedman is a "net seller"—*i.e.*, he sold more shares than he purchased during the Class Period—and a "net gainer"—*i.e.*, he received more in proceeds than he expended during the Class Period—he purportedly benefited from Defendants' fraud, rather than being harmed by it, and is thus disqualified from serving as Lead Plaintiff.  *See* Dkt. No. 26 at 8-9.

This argument fails.  While Friedman was indeed a net seller and net gainer with respect to his overall purchases of Sage securities during the Class Period, he was ***not*** a net ***gainer*** with respect to his Class Period transactions in Sage option contracts considered alone—that is, the Sage securities in connection with which he incurred his investment loss—because his proceeds from his sales of Sage options during the Class Period did ***not*** exceed his expenditures on Sage options during the Class Period.  Specifically, during the Class Period, Friedman expended

7

$343,820 on his purchases of 177 call option contracts, and realized proceeds of $266,425 from his sale of 216 call option contracts.  Accordingly, while Friedman sold 39 more call options than he purchased, he ***spent $77,395 more*** on those purchases than he realized as proceeds, meaning he was ***not*** a net gainer with respect to Sage option contracts—that is, the Sage securities in connection with which he incurred his investment losses, the recovery of which Friedman pursues in this litigation.  Courts routinely appoint net sellers as lead plaintiffs in PSLRA actions ***when they were not also net gainers***, as it cannot reasonably be argued that such investors profited from the Defendants' fraud more than they were harmed by it.  *See, e.g.*, *Lewis*, 2021 WL 3709291, at *4, *7 (appointing net seller as lead plaintiff because "it does not appear that he is also a 'net gainer'"); *In re MGM Mirage Sec. Litig.*, No. 2:09-CV-01558-GMN, 2010 WL 4316754, at *4, *6 (D. Nev. Oct. 25, 2010) (appointing net seller as a lead plaintiff because "a net seller merely sells more shares than it purchased during the Class Period and may well still suffer a loss" and "they normally have no problem proving damages"); *Richman*, 274 F.R.D. at 479-80 (appointing movant that was a net seller as a lead plaintiff because, "[n]otwithstanding that it is a net seller, [movant] still had losses which can be recognized" and, "[w]hile there is wisdom in the rule that net sellers who are also net gainers should not be lead plaintiffs; there is no good reason not to recognize losses which a net seller has incurred"); *Foley*, 272 F.R.D. at 132 (appointing net seller after reviewing specific facts of transaction).

III.    **ERRORS IN THE UPR TRUST'S SWORN CERTIFICATION FURTHER DEMONSTRATE THE PENSION FUNDS GROUP'S INADEQUACY**

In addition to being inadequate class representatives for the reasons set forth in Friedman's opposition brief (*see* Dkt. No. 25 at 3, 8-16), the Pension Funds Group has further demonstrated its inadequacy because one of its members, the UPR Trust, submitted a false Certification to the Court with its initial motion papers.  *See* Dkt. No. 26 at 6 n.3.  Courts routinely deny lead plaintiff

8

motions on the basis of false statements and errors, finding their presence in a movant's "submissions [to be] undoubtedly relevant and concerning, and [to] play[] an important role in the Court's assessment of [its] adequacy as a putative class representative." *Rodriguez*, 2021 WL 5282006, at *6. This is especially true of errors in a lead plaintiff movant's PSLRA certification. *See Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) (disqualifying movant when errors in sworn certification demonstrated a "substantial degree of carelessness and raise[d] doubt as to whether he will fairly and adequately represent the best interests of the class"); *In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, No. CIV A 07-177 FLW, 2007 WL 2683636, at *8 n.8 (D.N.J. Sept. 7, 2007) (disqualifying movant whose certification was "plagued with misinformation").

Here, the PSLRA unequivocally requires that a movant seeking to serve as lead plaintiff file a Certification that, *inter alia*, identifies all "other action[s] under th[e PSLRA], filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class". 15 U.S.C. § 78u-4(a)(2)(A)(v)). However, the UPR Trust's Certification submitted with the Pension Funds Group's initial motion papers (*see* Dkt. No. 19-2 at *5-6), the accuracy of which was sworn to "under penalty of perjury" (*see id.* at *6), omitted to disclose two cases filed within the three years prior to the date on which the Certification was signed in which the UPR Trust sought to serve as a class representative, the disclosure of which was required under the PSLRA. *See* Dkt. No. 26 at 6 n.3. Although the Pension Funds Group characterizes this issue as a minor, "inadvertent[] . . . administrative error", the fact that, at the earliest stage of this litigation, the Pension Funds Group's motion papers already contained a material error and false Certification should not give the Court

9

confidence that the Pension Funds Group is prepared to serve as a fiduciary to the Class in this litigation. *See Rodriguez*, 2021 WL 5282006, at \*6.

## IV.     THE PENSION FUNDS GROUP IS AN IMPROPER GROUP

Finally, over three rounds of briefing, the Pension Funds Group has failed to demonstrate that it is anything but an attorney-driven aggregation, cobbled together by two different law firms to manufacture the largest financial interest in this litigation.  Permitting these unrelated group members to aggregate their losses would enable the group to surpass the financial interest of Friedman, an individual investor with a larger financial interest than either of the Pension Funds Group's members incurred individually.  Courts routinely deny such transparently engineered groupings.  *See*, *e.g.*, *Nakamura v. BRF S.A.*, No. 18-CV-2213 (PKC), 2018 WL 3217412, at \*4 (S.D.N.Y. July 2, 2018).  Nor has the Pension Funds Group demonstrated a genuine need for two law firms to serve as Co-Lead Counsel in this litigation, an arrangement that inherently risks duplicative work and unnecessary expenses.  *See*, *e.g.*, *Chauhan v. Intercept Pharms.*, No. 21-CV-00036 (LJL), 2021 WL 235890, at \*5 (S.D.N.Y. Jan. 25, 2021).  In ostensible defense of its proposed Co-Lead Counsel arrangement, the Pension Funds Group cites other PSLRA cases in which Friedman's proposed Lead Counsel, Pomerantz, has worked with other law firms.  *See* Dkt. No. 29 at 3-4.  In each of those cases, however, Pomerantz was the ***sole*** proposed lead counsel, while the other firm's involvement was limited to performing non-overlapping work in a supporting role—an arrangement that does ***not*** implicate the same concerns as the appointment of two firms as Co-Lead Counsel.

10

**CONCLUSION**

For the foregoing reasons, Friedman respectfully requests that the Court issue an Order:

(1) appointing Friedman as Lead Plaintiff for the Class; and (2) approving Friedman's selection of

Pomerantz as Lead Counsel for the Class.

Dated: November 21, 2024

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Mark Friedman and Proposed*
*Lead Counsel for the Class*

THE SCHALL LAW FIRM
Brian Schall
(*pro hac vice* application forthcoming)
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Mark Friedman*

11